# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| JOSE ALEJANDRO TREJO, § | | |
| a/k/a ALEX TREJO, § | | |
|     Plaintiff, § | | |
| § | | |
| vs. § | CIV. NO. B-05-094 | |
| § | | |
| CINGULAR WIRELESS, LLC, § | | |
| d/b/a CINGULAR WIRELESS, § | | |
|     Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion Requesting the Court to Reconsider the Court's Order Granting Defendant's Motion for Summary Judgment, to Set Aside the Order, and to Grant Plaintiff Leave to File Plaintiff's Late Response to Defendant's Motion for Summary Judgment. (Doc. Nos. 19, 20 & 21). On March 13, 2007, Defendant Cingular Wireless, LLC ("Cingular"), filed Defendant's Motion to Supplement its Response to Plaintiff's Motion for Reconsideration, and Brief in Support. (Doc. No. 23). Cingular's motion to supplement is **GRANTED** to the extent that the Court will consider Cingular's brief. Plaintiff's motion to reconsider will be addressed below.

### I. Introduction

*A.     Procedural Background*

On July 31, 2006, Cingular filed a Motion for Summary Judgment (Doc. No. 16) to which Plaintiff Jose Alejandro Trejo ("Trejo") did not respond. As explained in the Court's order of September 7, 2006, as well as in countless authorities, there is a three step burden shifting framework in Age Discrimination in Employment Act ("ADEA") and Texas Commission on Human Rights Act ("TCHRA") cases. "First, the plaintiff must establish a prima facie case of discrimination." *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142 (2000). Second, once

the plaintiff has established a prima facie case, the burden shifts "to [the] respondent 'to produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Third, once the employer has produced evidence to support a nondiscriminatory reason, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005).  Without deciding whether Trejo had established a prima facie case, the Court granted Cingular's motion for summary judgment because, even assuming there was a prima facie case, Trejo's failure to respond left the Court with no rebuttal of Cingular's legitimate, nondiscriminatory reason for Trejo's discharge—his failure to meet the sales quota.  Trejo now asks the Court to reconsider the dismissal.  (Doc. No. 19).

    *B.*    *Factual Background*

Trejo began working for Southwestern Bell Mobile Systems, a predecessor to Cingular,[1] in 1992 and eventually, presumably through mergers within the telecommunications industry, became an employee of Cingular.  After transferring to the customer service department, Trejo became a sales representative working in Cingular's "HEB Channel" in the Rio Grande Valley.  The "HEB Channel" consisted of eight Cingular stores located inside HEB supermarkets, including locations in Brownsville, Edinburg, Harlingen, McAllen, Raymondville, and Weslaco.  (Doc. No. 16, Part II.E; Doc. No. 19, Ex. E).  Trejo was assigned to the Brownsville HEB location in March of 2000.

---

[1] (Doc. No. 16 at 3 n.10).

On or about November of 2000, Trejo was transferred to the Harlingen HEB location, where he sustained an on-the-job injury in the summer of 2000. Returning to work on or about June 5, 2002, Trejo was ordered to report to the Edinburg HEB location for two weeks of retail sales training. Once the two week training period was over, Trejo was again transferred to the Harlingen HEB location. In October of 2002 Trejo was informed by his supervisor that the Harlingen HEB location would be closing and he was ordered to report to the Weslaco HEB location. After just two weeks at the Weslaco HEB location, Trejo was asked to cover for another employee for one day at the Harlingen Express Store on Tyler and 77 Sunshine Strip. That very same day Trejo was offered his choice of sales locations. Trejo chose to remain at the Tyler and 77 Sunshine Strip location, where he met his sales quota for the remainder of November, the month of December, and early part of January of 2003. (Doc. No. 16, Part II.G; Doc. No. 19, Part IV.D.1). In mid-January Trejo was ordered to report to the Raymondville HEB location. During his first day at the Raymondville HEB location Trejo was ordered to report to the main retail sales office in Harlingen, where he was terminated, allegedly for his poor performance in sales during the months of August, September and October of 2002. Trejo was 61-years-old at the time of his discharge. (Doc. No. 1, Part 3).

The evidence before the Court shows that all Cingular sales representatives are given a sales quota. If a sales representative could not meet the monthly requirement of the sales quota that representative was placed in the Sales Performance Improvement Process ("SPIP"). There were three steps involved in the 2002 SPIP: (1) a written reminder, (2) a final warning, and (3) termination of employment. Although Cingular had taken measures under the 2001 SPIP before Trejo suffered an on-the-job injury for his failure "to meet his monthly attainment in May, June, and

3

July 2001," when Trejo returned to Cingular after taking leave for his on-the-job injury Cingular decided to send him to training and give him a fresh start. (Doc. No. 16, Part II.E).

On September 10, 2002, Trejo was given a written warning, the first step in the 2002 SPIP, based on his failure to meet the August sales quota. Trejo received his final warning, the second step in the SPIP process, after he failed to make his September sales quota.[2] Upon receiving the October 2002 sales numbers in mid-November, Trejo's supervisor e-mailed the Human Resources Manager on November 19, 2002, and the decision was made to discharge Trejo. (Doc. No. 16 at 6-7). According to Cingular, it did not actually discharge Trejo until January 20, 2003, due to certain personnel and organizational changes. (Doc. No. 16, Part II.H).

## II.  Analysis

In his motion for reconsideration, Trejo's attorney explains that the failure to respond to Cingular's motion for summary judgment was due to the fact that he was unfamiliar with the local rules, which require any party opposing a motion to file a response within 20 days. (Doc. No. 19). Trejo's attorney explains that he assumed there would be a hearing and that he would receive notice of the hearing in time to file his response. (Doc. No. 19). Trejo's attorney was mistaken in his assumption.

As pointed out by the Defendant, every federal district in Texas, as well as Federal Rule of Civil Procedure 56(e), requires responses to summary judgment motions without regard to whether a hearing has been set. (Doc. No. 22). In fact, the Southern District of Texas, which allows a party 20 days to respond, is much more generous than the Western District, which requires a response

---

[2] Although Trejo's final notice was by way of a memorandum dated October 29, 2002, Trejo and his supervisor signed and dated the memorandum on November 6, 2002, and the text of the memo indicates that it is effective as of October 28, 2002.

within 11 days,[3] and the Eastern District, which requires a response within 12 days.[4] Cingular also argues that the Court should not reconsider the dismissal of Trejo's case in light of the Fifth Circuit's recent unpublished decision in *Sangi v. Fairbanks Capital Corp.*, No. 06-20529, 2007 WL 625012 (5th Cir. Feb. 21, 2007). However, *Sangi* involved a Rule 60(b) motion for relief from judgment, whereas this case does not.

Although the Court had not yet entered a judgment in the form of a separate document as required by Rule 58 by the time Trejo filed his motion for reconsideration "pursuant to Federal Rules of Civil Procedure 54(b), 60(b) or 59(e),"[5] the grant of summary judgment in favor Cingular was, in effect, a final judgment as it disposed of all claims and parties.[6] The Fifth Circuit has held that when a motion for reconsideration is filed within ten days of judgment it shall be treated as a motion to alter or amend pursuant to Rule 59(e), whereas a motion served after that time shall be treated as a Rule 60(b) motion for relief from judgment or order. *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991). Since Trejo filed his motion for reconsideration on September 21, 2006, ten business days after the Court entered it's September 7, 2006 order, his motion shall be treated as one under Rule 59(e). Therefore, *Sangi*, which deals with the more stringent standards of Rule 60(b), is inapplicable to this case.

---

[3] W.D. TEX. LOC. R. CV-7(d).

[4] E.D. TEX. LOC. R. CV-7(e).

[5] (Doc. No. 19).

[6] "Once a summary judgment has been entered, no further proceedings in the action are feasible. Thus, in the two-party, single claim situation the granting of a summary judgment is a "judgment" within the definition of Rule 54(a) and an appeal is proper." 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2715 (3d ed. 1998). The instant case is indistinguishable. Although it is a two-party, two claim situation, both claims were disposed of by the Court's order of September 7, 2006.

"Since specific grounds for a motion to amend or alter are not listed in [Rule 59(e)], the district court enjoys considerable discretion in granting or denying the motion."  11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2810.1 (2d ed. 1995); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).  "A denial of a motion to reconsider a grant of summary judgment [will be reviewed by the Fifth Circuit] for abuse of discretion." *ICEE Distrib., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847 (5th Cir. 2006).  "If the party seeking reconsideration attaches additional materials to its motion that were not presented to the trial court for consideration at the time the court initially considered the motion for summary judgment, the court may consider the new materials in its discretion."  *Ford Motor Credit Co. v. Bright*, 34 F.3d 322 (5th Cir. 1994).  Therefore, because Trejo has attached affidavits, responses to interrogatories, and deposition testimony that were not before the Court when Cingular's motion for summary judgment was granted, this Court is free to reconsider the September 7, 2007 order.  (Doc. No. 18).       Although the Court's prior dismissal was appropriate in this case because Trejo's failure to respond left Cingular's proffered nondiscriminatory reason for discharging him uncontroverted, the Court is unwilling to deny Trejo a trial if he now has sufficient evidence to survive summary judgment.  Therefore, despite the fact that the Court's order of September 7, 2006, was sound, based upon the evidence before it, and the fact that Trejo had not filed a response, the Court will review Trejo's late response to determine whether he has made a prima facie case of employment discrimination and, if so, whether he has presented sufficient evidence to rebut Cingular's proffered nondiscriminatory reason for Trejo's discharge.

*A.     Prima Facie Case*

In order to establish a prima facie case of discrimination, Trejo must show direct evidence of discrimination or circumstantial evidence that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). Cingular has conceded that Trejo has met the first three elements, but argues that Trejo has failed to meet the fourth element because "[t]here is no evidence in the record of the age of Trejo's replacement or even that he was replaced," and "no evidence that age played any role in Cingular's decision to discharge him." (Doc. No. 16). A lack of evidence that Trejo was replaced, however, does not preclude him from making a prima facie case. The third alternative to the fourth element, that he was "otherwise discharged because of his age," applies in circumstances were a plaintiff is not replaced. *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir.), *cert. denied* 516 U.S. 1047 (1996). Thus, a plaintiff must only show that younger employees remained after he was discharged in order to make a prima facie case where he was not replaced. Trejo makes that very argument in this case. (Doc. No. 19) (citing *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995)).

In *Meinecke* the plaintiff alleged she was discriminated against on the basis of her age and gender when she was discharged as part of H & R Block's closing of its Houston office. *Id.* Although the plaintiff could not show that she was replaced by someone outside of the protected class, the Fifth Circuit explained that "[i]n cases where the employer discharges the plaintiff and does not plan to replace her, we have held that the fourth element is, 'more appropriately, that after

7

[the] discharge others who were not members of the protected class remained in similar positions.'" *Id.* The court ultimately held that *Meinecke* was a "reduction in force" case because plaintiff's position was eliminated. *Id.* at 84. As such, plaintiff could not show that others outside the protected class remained when she was terminated. *Id.* Rejecting plaintiff's assertions that her job responsibilities were shifted to other employees, the court noted that H & R Block actually closed plaintiff's office and that the individual who assumed many of plaintiff's duties "did so as an employee of another company, HRB/STI, which had agreed to provide managerial consulting services pursuant to a management agreement." *Id.* The court explained that this was clearly a reduction in force case because closing the Houston office meant laying off seven other employees, six of which were under the age of forty. *Id.*

While acknowledging there were some store closings at the H.E.B. Cingular locations in the Rio Grande Valley as part of a re-examination of distribution methods,[7] Cingular has not staked out a position on whether or not this is a reduction-in-force ("RIF") case or a replacement case. It simply states that "[t]here is no evidence in the record of the age of Trejo's replacement or even that he was replaced." (Doc. No. 16). The fact that the parties have not addressed whether this was a replacement type case or a RIF type case is somewhat problematic. If the Court knew the identity of the replacement, the resolution of whether Trejo has established a prima facie case would be quite simple, as the age of the replacement would be determinative. Conversely, "[a] plaintiff in a reduction-in-force case is generally not replaced at all, and thus to establish his prima facie case, he need not prove that he was replaced by someone outside the protected class." *Baker v. Randstad*

---

[7] As part of Cingular's efforts to re-examine distribution methods, stand-alone Retail Sales Offices or "RSOs" were constructed throughout the Rio Grande Valley. (Doc. No. 16).

*North America, L.P.*, 151 F. App'x 314, 318 n.9 (5th Cir. 2005) (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003)).

Trejo was a part of Cingular's sales network, which involved representatives at various Cingular sales locations. In fact, Cingular's motion for summary judgment reveals that on some occasions sales representatives were asked to fill in at different stores or switched from one location to another. For example, Trejo has worked at Cingular sales locations in Brownsville, Harlingen, Edinburg, Weslaco and Raymondville. (Doc. No. 19, Ex. C). Therefore, it is difficult to determine whether Trejo was replaced *per se*.[8]

The Fifth Circuit has determined that an employee who is not clearly replaced can meet he fourth element of demonstrating a prima facie case by showing that younger employees remained in cases other than drastic RIF type cases where offices were consolidated or departments were eliminated. For example, in *Vaughn v. Edel*, the court explained that "[b]ecause this case involves choosing employees with no plan to replace them, the fourth element of the prima facie case is, more appropriately, that after Vaughn's discharge others who were not members of the protected class remained in similar positions." 918 F.2d 517, 521 (5th Cir. 1990). Although *Vaughn* was a suit under Title VII, rather than the ADEA, the Fifth Circuit has held that, despite the fact that the ADEA is not part of Title VII, the same burden of production applies. *See Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (citing *Fields v. J.C. Penney Co.*, 968 F.2d 533, 536 n.2 (5th Cir. 1992); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504 (5th Cir. 1988)).

---

[8] Based on Cingular's motion for summary judgment, it seems more likely that between the other sales representatives being sent from store to store, the openings and closings of Cingular sales locations in the Rio Grande Valley, and whatever other efforts were being taken in the "re-examination of Cingular's distribution methods," Trejo's duties may have been absorbed by the other sales representatives rather than assumed by a replacement.

Similarly, in *Dean v. Property One, Inc.*, Karen S. Dean, a maid/housekeeper, filed a suit against her former employer alleging her discharge was based on her age, race and gender.  No. 02-30351, 2002 WL 31415198 (5th Cir. Oct. 10, 2002).  Although Dean originally claimed she was replaced by a white male, she later asserted that her duties were reassigned to a facilities manager. *Id.* at *1.  Dean's office manager "testified by affidavit that Dean was discharged as a cost-cutting measure."  *Id.*  Property One conceded that the first three elements of a prima facie case had been met, but argued that Dean had not met the fourth element. *Id.* at *3.  The court found that Dean had established a prima facie case of discrimination based on age, however, because Dean's office manager admitted he had to choose between laying off Dean or the younger facilities manager. *Id.*  Thus, it was enough for the plaintiff to show that her responsibilities were assumed by a remaining employee who was younger.

In *Bauer v. Albemarle Corp.*, the Fifth Circuit held that an employee allegedly terminated based on a violation of conflict of interest and confidentiality agreements she signed with her employer met the requirements of a prima facie case, despite the fact that she could not identify the employee who replaced her.  169 F.3d 962, 967 (5th Cir. 1999).  The court explained that "in circumstances where the plaintiff is not replaced," the correct standard is whether the plaintiff was "otherwise discharged because of her age."  *Id.* at 966.  Specifically, "[w]hen the employer does not plan to replace the discharged plaintiff, the fourth element is 'that after [the] discharge others remained in similar positions.'" *Id.* (citing *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990)).  Two years later the Fifth Circuit again held that a showing that an individual was "otherwise discharged because of his age" is appropriate "in circumstances where the plaintiff is not replaced," in *Washington v. Valspar Industrial Coatings Group*, No. 01-60458, 2002 WL 753503, *1 (5th Cir.

Apr. 9, 2002).  Although a showing that others outside of the protected class remain—as opposed to showing someone outside the protected class replaced the plaintiff—is most often employed in RIF cases, the practice is not necessarily limited to RIF cases.  For example, in a non-RIF case where the plaintiff was terminated for unacceptable behavior, the Northern District of Texas noted that "[w]hen the employer does not replace the plaintiff, the fourth element requires the plaintiff to show that others who are not in the protected class remained in similar positions."  *Lynch v. Baylor University Medical Center*, No. 05-0931, 2006 WL 2456493, *4 (N.D. Tex. Aug. 23, 2006) (citing *Bauer*, 169 F.3d at 966).

The Seventh Circuit has recognized this type of replacement as a "fungibility situation," explaining that "the fungibility of jobs is implicit when the terminated employee's responsibilities are absorbed by other employees."  *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir. 1995).  Although this theory is most often applied in RIF cases, it is equally applicable when there is no apparent replacement for the terminated employee.  The court has explained that in cases where "only one position [is] eliminated and the duties of that person [are] simply absorbed by the other employees[,] . . . the fourth prong of the prima facie case is met by showing simply that the plaintiff was 'constructively replaced,' in other words that his responsibilities were absorbed by employees not in the protected class."  *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043 (7th Cir. 2000).  For example, in *Paluck v. Gooding Rubber Co.*, Vicki Paluck, an administrative assistant/executive secretary, filed a claim under the ADEA.  221 F.3d 1003, 1007-08 (7th Cir. 2000).  During her tenure as an administrative assistant/executive secretary, Ms. Paluck worked primarily for three Gooding executives.  *Id.* at 1007.  Although both parties agreed that "Ms. Paluck's duties were absorbed by other employees," there was a dispute as to whether "she was

11

discharged while other, similarly-situated employees who were not members of the protected class were treated more favorably." *Id.* at 1011-12.  The court found that there was a prima facie case because "it reasonably may be concluded that Herring [another employee who frequently shared duties with Ms. Paluck] effectively replaced Ms. Paluck." *Id.* at 1012.  Although the Seventh Circuit's decisions are not controlling here, the Court finds them persuasive when read in conjunction with the Fifth Circuit's jurisprudence.

Cingular claims to have discharged Trejo based on his failure to meet his sales quota. Cingular has not explicitly claimed Trejo's discharge was part of a store closing or RIF.  While acknowledging that several Cingular stores located inside H.E.B. supermarkets were closed, Cingular explained that this was "part of a wider re-examination by Cingular of its distribution methods."  (Doc. No. 16, Part II.F).  In fact, a new store was opened in Harlingen as part of this same re-examination of distribution methods.  *Id.*  This, coupled with the fact that, if Trejo's experience is typical, Cingular utilizes a sales force that consists of individual sales representatives that are moved from store to store within the lower Rio Grande Valley, makes it difficult to determine whether Trejo was replaced or the sales force was effectively reduced.

"Establishing a prima facie case creates a presumption that the employer unlawfully discriminated against the employee." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). The Fifth Circuit has explained that "to establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985).  That is, the burden is not an onerous one.  *Texas Department of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  A prima facie case merely raises the inference of discrimination because the courts presume the employer's acts, if otherwise unexplained, are more likely than not

12

based on the consideration of impermissible factors. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977). "The prima facie case, however, is a flexible standard that 'is not intended to be rigidly' applied." *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995) (quoting *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567 (11th Cir. 1992)). Based on the lack of evidence as to whether Trejo was replaced, the apparent fungibility of the Cingular sales representatives, and the possibility that this is effectively a RIF case, the Court finds that the correct standard for determining whether Trejo has established the fourth element of his prima facie case under the ADEA is whether younger employees remained when he was discharged.

Trejo has presented the deposition testimony of Donald Decock as evidence that only younger employees remained when he was terminated. Decock, who was 41-years-old in 2002, testified that Trejo was the oldest sales representative in the Rio Grande Valley. (Docket No. 19, Ex. E at 39-42). Trejo also filed an affidavit stating that he was the oldest sales representative, with the next oldest sales representatives in their late 30s or early 40s. (Doc. No. 19, Ex. D). Therefore, Trejo has established a prima facie case by presenting the deposition testimony of Donald Decock and his own affidavit, both of which indicate that younger employees remained.

Although Decock was a remaining employee within the protected class, the United States Supreme Court has held that the person who replaces or is treated more favorably than the plaintiff need not be outside the protected class so long as the person is younger than the plaintiff. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). The Court explained:

> The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age*. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by

someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.

*Id.* Trejo was 61-years-old at the time of his discharge, while Donald Decock was the oldest remaining employee at the age of 41 in 2002. Therefore, Trejo has established a prima facie case by showing that younger employees remained after he was discharged.

    *B.*  *Rebutting the Defendant's Nondiscriminatory Reason for Discharge*

In addition to establishing a prima facie case, Trejo must also rebut Cingular's legitimate, nondiscriminatory reason for his termination. *Reeves*, 530 U.S. at 142. "In tandem with a prima facie case, the evidence allowing rejection of the employer's proffered reasons will often, perhaps usually, permit a finding of discrimination without additional evidence." *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996). Therefore, the Court must now determine whether Trejo has enough evidence to discredit Cingular's proffered legitimate, nondiscriminatory reason for his termination.

Trejo's final warning was given in the form of a memorandum from his supervisor entitled "Performance Improvement Plan." (Doc. No. 19, Ex. D-5). Although the memorandum is dated October 29, 2002, and calls for an October 28, 2002 implementation, as previously noted, the memorandum was signed by Trejo and his supervisor on November 6, 2002. *Id.* The memorandum explains that Trejo failed to meet the September attainment and sets forth a plan to improve his performance to acceptable levels. The memorandum further states:

> Alex, it is important that you understand that this is a plan to help you improve your performance and *allow you the opportunity to succeed at Cingular Wireless*. This improvement plan is designed to help you succeed, and *the results of each item will be reviewed with you on a monthly basis (or more frequently as needed)*. Immediate corrective action is required on your part. *Failure to meet part or all of the above performance improvement plan may jeopardize your continued employment with Cingular wireless*. (Emphasis added.)

The decision to terminate Trejo was made just 13 days later.[9] (Doc. No. 16 at 6-7). In fact, due to the lag time in Trejo's supervisor receiving the monthly sales reports, the decision to terminate him was based on the October 2002 sales numbers despite the fact that Trejo was not given his "final warning" under the SPIP until November. Put another way, after receiving a "Performance Improvement Plan," which indicated Cingular was going to allow him the "opportunity to succeed," Trejo was terminated without that opportunity based on performance which had taken place prior to the issuance of the plan. Such conduct, if done knowingly, was at the very least disingenuous on the part of Cingular. Had Cingular opted to institute a policy whereby employees are terminated after failing to meet the sales quota for three months Trejo's termination would have been in keeping with the policy. However, Cingular strayed from their policy when they chose to discharge Trejo based on the October sales after issuing him a final warning that included a "Sales Improvement Plan." In fact, Trejo's sales numbers reveal that he improved his sales every month after returning from leave and actually met the required sales quota between the time he was given the "Sales Improvement Plan" and the time of his discharge.

In explaining Trejo's discharge Cingular notes that other sales representatives were able to meet the monthly sales quotas. (Doc. No. 16, Part II.J). While there may not have been any other sales representatives terminated due to a failure to meet sales quotas, Cingular has acknowledged in the very next section of their brief that "three Sales Representatives . . . who failed to meet the

---

[9] Cingular's motion for summary judgment explains:

> [Trejo's Supervisor] received the October 2002 sales numbers in mid-November 2002. On November 19, she e-mailed Beth Walls, the Human Resources Manager, informed her that Trejo had not met the attainment percentage for that month, and, since Trejo was on Final Warning, sought guidance about how to proceed. Walls informed her assistant to prepare the necessary paperwork to discharge Trejo.

(Doc. No. 16 at 6-7).

monthly attainment were, like Trejo, entered into the discipline process and [] no Sales Representative other than Trejo reached the final step of the disciplinary process." (Doc. No. 16, Part II.K). Given the inconsistencies in Cingular's decision to issue Trejo's final warning at the end of October and then fire him based on October sales numbers less than two weeks later, the fact that other sales representatives never reached the final step of the SPIP only furthers Trejo's allegations that he was treated differently. One is left wondering whether these other three employees who were younger never reached the final step because they were given time to improve their sales or if Cingular at least waited for a new month's sales numbers before advancing the SPIP. Had Trejo been given such an opportunity he might never have reached the final step of the SPIP either.

Although Cingular's termination of Trejo without allowing him the opportunity to take corrective action in accordance with the SPIP was clearly a contradictory, disingenuous course of action, the Fifth Circuit has rejected attempts to show a pretext based solely on an employer's failure to follow its own policy. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 346 (5th Cir. 2007). In a Title VII racial discrimination case, the court explained:

> A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees from the arbitrary employment practices of their employer, only their discriminatory impact.

*Id.* (quoting *Upshaw v. Dallas Heart Group*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997)). That is, the Fifth Circuit has held that the violation of company policy in the discharge of an employee is permissible, so long as the employer is an equal opportunity violator of its policies. *E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996). In this context, the law of the Fifth Circuit is at odds with that of the Sixth, Seventh and Tenth Circuits. *See Ploscowe v. Kadant*, 121 F. App'x 67, 76 (6th Cir. 2005) (noting that "an employer's deviation from established layoff

procedures can be viewed as evidence of a pretext"); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 980 (7th Cir. 2000) (holding that the fact that an employer's policy would have precluded the termination can be evidence of a pretext); *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (explaining that a plaintiff can make a showing of a pretext "with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances"). Thus, despite the fact that Trejo was discharged without an opportunity to implement his performance improvement plan, in the Fifth Circuit such a showing does not, in and of itself, constitute a pretext for Cingular's proffered reason. Nevertheless, a fact finder could believe Cingular's conduct was not only a violation of its own policies, but conduct which, if done knowingly and intentionally, may be suggestive of dishonest, and perhaps fraudulent, conduct.

As noted above, Trejo was not actually discharged until January of 20, 2003. Regardless of Cingular's explanation for why it took them so long to discharge Trejo, or when the actual decision was made, the fact is that Trejo actually made satisfactory sales numbers from November 6, 2002, the date he signed his second warning and performance improvement plan, until the date of his discharge. Therefore, Trejo has certainly raised evidence that Cingular never had a legitimate, nondiscriminatory reason for taking any action against Trejo after November 6, 2002. If one believes this evidence, Trejo received a performance improvement plan, improved his sales to an acceptable level, and was discharged anyway, while younger employees were not. Cingular freely admits that the decision to discharge Trejo was based on his October 2002 sales numbers. *See* Note 9, *supra*. A finder of fact could conclude in light of Cingular's purported efforts to help Trejo improve beginning in November of 2002 that Cingular's explanation that Trejo was terminated

based on his poor sales figures was a mere pretext. In *Laxton v. Gap, Inc.*, the Fifth Circuit explained:

> Gap asserts that the jury may find that its proffered justification is "unworthy of credence" only if Laxton proves "mandacity." This overstates Laxton's burden. As the Supreme Court noted in *Reeves*, a plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action.

333 F.3d 572, 580 n.2 (5th Cir. 2003). In this case, Trejo has met that burden.

Thus, this case is distinguishable from other cases where an employer has *merely* violated company policy or procedures in discharging an employee because, in this case, the policy violation directly contradicts the employer's proffered reason for the discharge. That is, a fact finder could believe Trejo should not have reached the third step of the SPIP (discharge) because he continually met his sales quota from the time he reached the second step right up until the time he was discharged. The fact that the second step of the SPIP included promises to allow Trejo "the opportunity to succeed at Cingular Wireless" and emphasized that "this is a plan to help you improve," also supports the claim of *illegitimacy* of Cingular's purported reason for Trejo's discharge. Furthermore, Cingular's conduct in discharging Trejo when he was meeting his quota leads one to question whether Trejo's allegation that Cingular assigned him to unfavorable sales locations so that he would be unable to meet his sales quota in August, September and October might be accurate. Trejo has presented sufficient evidence to create a genuine issue of material fact in regard to Cingular's legitimate, nondiscriminatory reason.

### III. Conclusion

Trejo's late response to Cingular's motion successfully established a prima facie case, and successfully rebuked Cingular's legitimate, nondiscriminatory reason for Trejo's discharge. Therefore, Plaintiff's Motion Requesting the Court to Reconsider the Court's Order Granting Defendant's Motion for Summary Judgment, to Set Aside the Order, and to Grant Plaintiff Leave to File Plaintiff's Late Response to Defendant's Motion for Summary Judgment (Doc. Nos. 19, 20 & 21) is **GRANTED**. Counsel are warned that any further non-compliance with the Rules of Civil Procedure, Local Rules of the Southern District of Texas and/or of this Court could very well prove fatal to their client's position.

Signed this 19th day of April, 2007.

                                                                            _____
                                                                            Andrew S. Hanen
                                                                            United States District Judge